**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BAY CLUB MEMBERS, LLC, RICHARD REILLY, JOAN KELLY, MARY ANN SULLIVAN, WILLIAM J. HEWITT, MELISSA GORDON, MATT COSTA, JON A. CIFFOLILLO, and MICHAEL F. STAUFF, Plaintiffs, v. SELECTIVE INSURANCE COMPANY OF AMERICA, Defendant. | NO. 1:21-cv-11791-DPW |

## <u>ORDER ON DEFENDANT SELECTIVE INSURANCE COMPANY OF AMERICA'S MOTION TO JOIN</u>

CABELL, U.S.M.J.

The plaintiffs, Bay Club Members, LLC ("Bay Club") and members of Bay Club's board, Richard Reilly, Joan Kelly, Mary Ann Sullivan, William J. Hewitt, Melissa Gordon, Matt Costa, Jon A. Ciffolillo, and Michael F. Stauff ("the individual plaintiffs"), have brought an action against their insurance provider, defendant Selective Insurance Company of America ("the defendant"), for its failure to provide coverage for litigation costs the plaintiffs incurred. The defendant moves pursuant to Fed. R. Civ. P. 19(a) to join two entities as plaintiffs:  (1) Joseph and Nancy Bruno in their capacity as co-trustees of the Shemamedoit Trust III (referred to singularly as "Trust III"), and (2) Walter Uihlein, a previous Bay Club board member ("Uihlein").  (D. 23).  The motion has been

referred to this court for resolution.  Following a hearing on the motion, and for the reasons explained below, the motion is denied.

## I.   <u>RELEVANT BACKGROUND</u>

In December 2018, the defendant issued a private company management liability policy ("the Selective policy") to Bay Club and its "members of the board of managers," i.e., the individual plaintiffs.  (D. 19-1, pp. 11, 20).  Part A of the Selective policy covers liability for company directors, officers, and the entity itself, including members of the board of managers, by paying on behalf of them "all 'loss' which [they] shall be legally obligated to pay as a result of a 'claim' made against [them] during the 'policy period' or the 'Extended Reporting Period' for 'wrongful acts.'"  (D. 19-1, pp. 20, 37).  Claims that are covered include "criminal or civil" proceedings "for monetary, non-monetary, or injunctive relief" as well as arbitration proceedings.  (D. 19-1, p. 38).  Wrongful acts covered include "any actual or alleged act, omission . . . neglect, or breach of duty, by [the insured] in their capacity with the 'company.'"  (D. 19-1, p. 39).

Relevant here, the Selective policy excludes coverage for "'loss' from any 'claim' made against any 'insured'. . . made by or made on behalf of the 'company,' or any security holder of the 'company,' or any 'insured person.'"  (D. 19, ¶ 25) (D. 19-1, p. 39).  There are several exceptions within this exclusion, however, including for claims brought by "any former director or officer"

and for "shareholder derivative action[s]."  (D. 19-1, p. 40).
The plaintiffs also had an Operating Agreement which was in effect
prior to the beginning of the Selective policy that provided that
Bay Club "shall indemnify, save harmless, and pay all judgments
and claims against each Manager or Officer."[1]  (D. 31-3, p. 18).

According to the plaintiffs, Uihlein, a "previous Board
Member of Bay Club in 2006," notified Bay Club in October of 2019
of his "claims against the plaintiffs."  (D. 19, p. 6).  One month
later, the Brunos, in their capacity as co-trustees of Trust III,
and others allegedly notified Bay Club of their own "claims against
the plaintiffs."  (D. 19, p. 6).  The plaintiffs assert that they
notified the defendant of both notices in November 2019.  (D. 19,
p. 6).  According to the plaintiffs, Uihlein's and Trust III's
respective claims qualified for coverage under the Selective
policy because Uihlein is a former director or officer and the
claims include counts asserting a shareholder derivative action.
(D. 19, p. 7).  Later, Trust III filed a demand for arbitration
against the plaintiffs with the American Arbitration Association
("AAA") for which the defendant denied coverage.  (D. 19-2, pp. 2-
3) (D. 19, pp. 6-7).

Trust III and Uihlein then jointly filed an additional demand
for arbitration ("the underlying arbitration") with the AAA in

_____

[1] The Operating Agreement's definition of "Manager" includes the plaintiffs.
(D. 31-3, p. 3)

September 2020, for which the defendant again denied coverage. (D. 19-3, pp. 2-3).  According to the "Alleged Facts" section of the defendant's "Coverage Declination" letter for the underlying arbitration, "the Brunos and Uihlein . . . alleg[ed] that the Insureds devised a self-interested deal . . . to enrich themselves and other members of the Insured Entity to the detriment of the Insured Entity, its members, and [the Brunos and Uihlein]."  (D. 19-3, pp. 2-3).

In January 2022, Trust III received a "Final Order and Award" from the underlying arbitration (D. 24-1, p. 4, ¶ 13), and Uihlein reached a settlement agreement with the plaintiffs.  (D. 19, p. 8) (D. 24-1, pp. 50-51, ¶¶ 276, 278).  Trust III subsequently filed a complaint in a Court of Chancery in Delaware ("the Delaware action") seeking to partially vacate the Final Order and Award. (D. 19-4, p. 2).  The defendant denied coverage for the Delaware action, including for any obligation to defend or indemnify the plaintiffs.  (D. 19-5, p. 2).

The plaintiffs contend the defendant breached the Selective policy by "fail[ing] and/or refus[ing] to provide coverage for defense costs and [to] indemnify Bay Club and the Board Members against the [underlying arbitration] or the Delaware [a]ction." (D. 19, p. 10).  They seek a declaratory judgment regarding coverage and also assert claims for breach of contract and

violation of M.G.L. c. 93A and 176D for engaging in unfair settlement practices. (D. 19, pp. 10-12).

## II.   **THE MOTION TO JOIN**

The defendant moves to "join [the Brunos], in their capacity as co-trustees of Trust III, and Uihlein as plaintiffs in this case" on the ground that they are necessary parties under Fed. R. Civ. P. 19(a)(1) ("Rule 19(a)(1)"). (D. 23). The defendant argues that Trust III and Uihlein have an interest in the potential proceeds from this case, and the defendant could be subject to a substantial risk of inconsistent obligations if Trust III and Uihlein are not joined. (D. 24, p. 5). The plaintiffs and Uihlein argue in opposition that neither is a necessary party because "neither Trust III nor Uihlein can relitigate the issue of policy coverage." (D. 30, p. 2) (D. 31, p. 2). The plaintiffs also note that Uihlein and Trust III have not expressed any desire in protecting their potential interests in this action. (D. 31, p. 11).

## III. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 19(a), a person "must be joined as a party if "in that person's absence, the court cannot accord complete relief among existing parties (19(a)(1)(A))," or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" "impair or impede the person's ability to

protect the interest," (19(a)(1)(B)(i)) or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." (19(a)(1)(B)(ii)).  The party seeking joinder bears the burden of establishing that joinder is warranted.  *Roy v FedEx Ground Package Sys., Inc.*, No. 3:17030116-KAR, 2020 WL 3799203, at *2 (D. Mass. July 7, 2020) (citations omitted).  When determining if a person is a necessary party, "the court is expected 'to make pragmatic, practical judgments that are heavily influenced by the facts' of the specific case."  *Duggan v. Martorello*, Civil Action No. 18-12277-JGD, 2022 WL 952187, at *5 (D. Mass. Mar. 30, 2022) (quoting *Bacardi Int'l Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d 1, 9 (1st Cir. 2013)).

Regarding Rule 19(a)(1)(B)(i), courts have held that proceeds from insurance coverage qualify as the sort of interest that may appropriately underlie a motion for joinder.  *See e.g., Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 634 (1st Cir. 1989) (members had "concrete interest in the unexecuted settlement agreement" involving proceeds from insured's policies); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mass. Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 322 (D. Mass. 1987) (finding nonparty "indicated that it does not desire such protection" of its interest in insurance proceeds); *see also AIG Prop. Cas. Co. v. Green*, 172 F. Supp. 3d 468, 476 (D. Mass. 2016) (assuming tort-claimant is interested

party in dispute between insured and insurer). However, if a person decides not to intervene in the action, it indicates the person does not believe their interest to be at risk, and courts should not question that decision absent compelling reason. *United States v. San Juan Bay Marina*, 239 F.3d 400, 407 (1st Cir. 2011).

Regarding Rule 19(a)(1)(B)(ii), and assuming all other requirements have been met, a person is a necessary party if their nonjoinder would subject a party to "substantial risk of . . . inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). "[I]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) (citation omitted); *Hopkinson v. Equifax Info. Servs., LLC*, No. 19-cv-12290-IT, 2021 WL 664040, at *6 (D. Mass. Feb. 19, 2021) (quoting *Delgado*, 139 F.3d at 3). Rule 19(a)(1) only speaks to inconsistent *obligations*, not to inconsistent judgments or results. *Nat'l Union Fire*, 117 F.R.D. at 322; *CFI of Wis., Inc. v. Hartford Fire Ins. Co.*, 230 F.R.D. 552, 555 (W.D. Wis. 2005) ("[J]udgments and results are not the same as obligations under F.R.C.P. 19(a).") (citations omitted); *see Delgado*, 139 F.3d at 3.

With respect to insurance coverage disputes, courts do recognize that the interests of judicial economy are served in having a tort claimant join an action. *See Nat'l Union Fire*, 117

F.R.D. at 323 (discussing how declaratory judgment would mean little if non-party could relitigate coverage issue and party could not be afforded complete relief); *AIG Property Casualty Co.*, 172 F. Supp. 3d at 476 (citing *Indemnity Ins. Co. of N. Am. v. Kellas*, 173 F.2d 120, 124 (1st Cir. 1949)). Where a third-party claimant can relitigate the issue of insurance coverage in a separate proceeding, a court may join the claimant to afford "more complete relief." *See Indemnity Ins. Co. of N. Am.*, 173 F.2d at 124 (citations omitted).

## IV.  ANALYSIS

Focusing principally on Rule 19(a)(1)(B), the defendant argues that Trust III and Uihlein have an interest in the insurance proceeds at issue here but "would not be bound by any judgment from this court" absent joinder, and consequently would be free to bring an action regarding the same issue in a different proceeding, and/or could pursue any "unpaid payment obligations they are entitled to under the Final Award and Mr. Uihlein's settlement agreement." (D. 24, p. 5-6). The defendant argues the court therefore must join Trust III and Uihlein as plaintiffs here to eliminate the risk of inconsistent obligations. The defendant advances two principal arguments in support of its contention but the court does not find either persuasive.

The defendant first argues that Trust III and/or Uihlein could bring an action against the defendant under Massachusetts' direct-

action statute, M.G.L. c. 214, § 3(9).  (D. 24, p. 6).  That statute allows a judgment creditor to file an action to reach a judgment debtor's insurance to satisfy damages suffered "on account of bodily injury or death or for loss or damage resulting therefrom, or on account of damage to property."  M.G.L. c. 214, § 3(9).  But proceeding under this statute would be unavailing for at least two reasons.

First, section 3(9) is limited to cases where the claimed damages arise from "bodily injury or death," or from "damage to property."  The claimed damages here do not arise from such events but instead arise solely from financial decisions the plaintiffs made.  It follows that section 3(9) is facially inapplicable and would not permit either Trust III or Uihlein to bring an action against the defendant.

Second, and independently, section 3(9) requires an injured party to first obtain a judgment of liability against the insured before acting against the insurer, but no judgment has yet been rendered against the plaintiffs here.  *See Dorchester Mut. Ins. Co. v. Legeyt*, No. CV2006-02077, 2008 WL 5784218, at *5 n.8 (Mass. Sup. Dec. 30, 2008) ("It is clear that, in the absence of a final judgment. . . [the injured party] has no right to reach and apply the Policy under M.G.L. c. 214, §3(9)."); *Bonilla v. Allstate Ins. Co.*, No. 98-0329A, 2001 WL 1173307, at *3 (Mass. Super. Oct. 1, 2001) (holding injured party allowed to "reach and apply" policy

where judgment entered against insured in case involving bodily injury from motor vehicle collision); *Szafarowicz v. Gotterup*, 68 F. Supp. 2d 38, 43 (D. Mass. 1999) ("[T]ort victim must obtain a judgment against the tortfeasor before initiating an action against that tortfeasor's liability insurer."); *accord In re Dolphinite, Inc.*, 355 B.R. 391, 403 (Bankr. D. Mass. 2006) ("Until . . . there is a determination that [the insured] is liable to the estate . . . the Trustee lacks standing to seek a declaratory judgment with respect to any insurance proceeds.").  It is true that the plaintiffs executed a settlement agreement, but that does not constitute a final judgment against them.  On the contrary, it instructs by its terms that it "shall not be construed as an admission by the Parties of any liability, misconduct, or wrongdoing . . . or as an admission by them . . ."  (D. 31, p. 9).  Accordingly, Trust III and Uihlein would not be able to sue the defendant under section 3(9) because they are not judgment creditors, and the plaintiffs similarly are not judgment debtors.

The defendant next contends that Trust III and/or Uihlein could bring an action against the defendant based on a third-party beneficiary theory.  (D. 51).  For a nonparty to have standing to sue as a beneficiary, they must show that they are an "intended" beneficiary under the contract at issue.  A party is considered an intended beneficiary when the language and circumstances of the contract indicate a "clear and definite" intent that the party

would benefit from the promised performance.  *See Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366 (1997).

An intended beneficiary need not be specifically named in the contract, however, so long as they fall "within a class clearly intended by the parties to benefit from the contract." *Massachusetts v. Mylan Laboratories*, 357 F. Supp. 2d 314, 326 (D. Mass. 2005).  Absent clear intent that they are intended to benefit from the contract, a nonparty that may merely indirectly benefit from the contract is merely an "incidental" beneficiary.  *Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 181 (D. Mass. 2011).  The distinction matters because "[u]nder Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract." *Pollack v. Fed. Ins. Co.*, Civil No. 13-12114-FDS, 2013 WL 6152335, at *2 (D. Mass. Nov. 21, 2013) (quoting *Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard College*, 413 Mass. 66, 71 (1992)); *accord Lakew v. MBTA*, 65 Mass. App. Ct. 794, 799 n.10 (2006) ("[C]ontracting parties may well intend that a third party receive a benefit as a result of their contract but not intend to confer on the third party a right to enforce the contract.).

The record here fails to show a clear and definite intent that Trust III and Uihlein were to benefit under the Selective policy.  Neither is named in the policy and the court has not been directed to any portion of the policy unambiguously indicating

11

that they fall "within a class clearly intended by the parties to benefit from the contract." *Mylan Labs*, 357 F. Supp. 2d at 326. Indeed, the policy at issue includes an anti-assignment clause preventing the plaintiffs from assigning any rights under the policy to anyone without the defendant's written consent, undermining any suggestion that one could otherwise reasonably infer a "clear and definite" intent to extend the policy's benefits to any entity who might have an interest in any benefits available under the policy. (D. 19-1, p. 35). Thus, even assuming Trust III and Uihlein have some potential beneficial interest in the outcome of this litigation, they are, on the basis of the present record, at most incidental, rather than intended, beneficiaries, which means they have no right to bring an action to litigate the scope of coverage here.

Further, to the extent it is probative, Trust III and Uihlein do not even seek to be joined to this action, and Uihlein has in fact stated that he does not need protection under the policy for his interest, a factor militating against forced joinder. (D. 30, p. 5); *see San Juan Bay Marina*, 239 F.3d at 407. Further still, it appears that neither party is likely to assert an interest in the suit in the future where, as the court understands it, Bay Club has already paid Trust III the amount awarded by the arbitrator from the Final Order and Award, and paid Uihlein the first $750,000 he is entitled to under the Settlement Agreement,

with the potential for a second installment of $750,000 depending on the outcome of this lawsuit, (D. 31, p. 4) (D. 51).

In sum, the record fails to show that the court must join Trust III and/or Uihlein as plaintiffs to avoid a substantial risk of inconsistent obligations.  The record suggests that neither entity has an interest in bringing an action against the defendant, now or in the future.  Even assuming otherwise, Trust III and Uihlein could not bring an action against the defendant under Massachusetts' direct-action statute, M.G.L. c. 214, § 3(9), because they are not judgment creditors, and because the damages regardless do not arise from serious bodily injury or property loss.  They also could not bring an action as beneficiaries under the Selective policy because there is nothing in the policy, or for that matter in the record as a whole, to show a clear and definite intent that they specifically were intended to benefit from the policy.[2]

---

[2] The defendant cites *National Union Fire* and *AIG Property* as authority for the proposition that a nonparty like Trust III and/or Uihlein may litigate the insurance coverage issue here.  Those cases are already of dubious instructive value given the factual differences, but they are also easily distinguishable because the noninsured entities in those cases had either a clear legal right or an actual obligation to litigate the insurance coverage issue.  *AIG Property*, 172 F. Supp. 3d at 476 (joinder necessary where claimant was injured party); *Nat'l Union Fire*, 117 F.R.D. at 323 (court refused claimant's request to be dropped from case where claimant was also a named party).  Here, Trust III and Uihlein have no legal right or obligation to join the suit where they are neither named parties nor intended beneficiaries under the policy.

## V.    CONCLUSION

For the foregoing reasons, the defendant's motion to join (D. 23) is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  January 27, 2023