UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BAY CLUB MEMBER'S, LLC, <br> RICHARD REILLY, <br> JOAN KELLY, <br> MARY ANN SULLIVAN, <br> WILLIAM J. HEWITT, <br> MELISSA GORDON, <br> MATT COSTA, <br> JON A. CIFFOLILLO, and <br> MICHAEL F. STAUFF, <br><br>             Plaintiffs, <br><br>     v. <br><br> SELECTIVE INSURANCE COMPANY <br> OF AMERICA, <br><br>             Defendant. | CIVIL ACTION <br> NO. 21-11791-WGY |

YOUNG, D.J.                                    November 9, 2023

## MEMORANDUM OF DECISION AND ORDER

Bay Club Members, LLC ("Bay Club") and Selective Insurance Company of America ("Selective") each have independently moved for summary judgment as matter of law.  See Bay Club's Mot. Summ. J. (the "Bay Club Mot."), ECF No. 67; Selective's Mot. Summ. J. ("Selective Mot."), ECF. No. 70.  Selective moves for summary judgment on all counts, while Bay Club only moves for partial summary judgment on counts I and II.  See Bay Club Mot., ECF No. 67; Selective Mot., ECF. No. 70.

## I.   INTRODUCTION

### A. Undisputed Facts

Bay Club was created in June 2006 under the Delaware Limited Liability Act.  Bay Club's Resp. Selective's Statement Facts ("Bay Club's Resp. S.O.F.") 2, ECF. No. 82.  Bay Club's primary place of business is Massachusetts, and the named plaintiffs, all Board Members of Bay Club, each reside in Massachusetts.  Am. Compl. 1-2, ECF No. 19; Bay Club's Resp. S.O.F., ECF. No. 82.  On July 10, 2006, the unitholders of Bay Club entered into a Limited Liability Operating Agreement to govern the management and operation of Bay Club (the "Operating Agreement").  Bay Club's Resp. S.O.F. 2, ECF. No. 82; Selective's Resp. Bay Club's S.O.F. 1, ECF No. 84.  Walter Uihlein ("Uihlein") was an initial Board Member and served as a "Managing Director" of Bay Club from 2006 to 2007. Id. at 3. According to the Operating Agreement, internal disputes related to violations of the Operating Agreement are to be resolved -- as a last resort -- through arbitration.  Id. at 3.

In 2018, Selective Insurance Company of America, a New Jersey corporation with its primary place of business in New Jersey, issued to Bay Club a private company management liability policy with an effective policy period from December 10, 2018, to December 10, 2019.  Am. Compl. 2, ECF No. 19;

‘      ,

Selective's Resp. Bay Club's S.O.F. 3, ECF No. 84.  The

pertinent portions of the Policy read as follows:

> SECTION IX — DUTIES IN THE EVENT OF A CLAIM
> If during the "policy period" the "insured" becomes
> aware of a specific "wrongful act" believed likely to
> give rise to a "claim" and provides the "insurer"
> written notice of such "wrongful act" and the
> particulars involved as soon as practicable, but no
> later than the expiration of the policy, then any
> claim subsequently made arising out of such wrongful
> act shall be deemed to have been made when notice of
> the "wrongful act" was first given.
>
> SECTION XI — EXCLUSIONS
> The "insurer" shall not be liable for "loss" from any
> "claim":
> J. for any actual or alleged liability assumed under
> the terms, conditions or warranties of any oral,
> electronic, or written contract or agreement. However,
> this exclusion does not apply:
>     1. to liability the "insured" would have in the
>     absence of such contract or agreement;
>     2. to "insureds" under Section I. A. and I. B. under
>     Coverage Part A.
>
>               COVERAGE PART A ("I. A.")
> SECTION I — INSURING AGREEMENTS
> A. Individual Liability
> The "insurer" shall pay on behalf of the "insured
> persons" all "loss" which the "insured persons" shall
> be legally obligated to pay as a result of a "claim"
> first made against the "insured persons" during the
> "policy period" or the Extended Reporting Period for
> "wrongful acts", except for any "loss" which the
> "company" actually pays as indemnification.
>
> B. Company Liability
> The "insurer" shall pay on behalf of the "insured
> entity" all "loss" which the "insured entity" shall be
> legally obligated to pay as a result of a "claim"
> first made against the "insured entity" during the
> "policy period" or the Extended Reporting Period for
> "wrongful acts".
>
> SECTION II — DEFINITIONS

A. "Claim" means:
1. written demand for monetary or non-monetary damages, including injunctive relief, made against an "insured";
2. civil or criminal judicial, administrative or regulatory proceeding for monetary, non-monetary or injunctive relief begun against an "insured", including any appeal thereof.
3. arbitration proceeding begun against an "insured" by serving of a demand for arbitration

C. "Insured" means the "insured entity" and all "insured persons".

E. "Insured persons" means all person who were, now are, or will be directors, officers, management committee members, members of the board of managers or natural person general partners of the "company" and all "employees".

F. "Loss" means:
1. damages, settlements or judgments;
2. pre-judgment or post-judgment interest;
3. costs or fees awarded in favor of the claimant;
4. to the extent insurable by law and subject to the applicable law most favorable to the insurability of such damages, punitive or exemplary damages, or the multiplied portion of a multiple damages award; and
5. "defense costs".
"Loss" does not include:
1. amounts for which the "insured" are not legally liable;
2. amounts which are without legal recourse to the "insureds";
3. taxes, fines or penalties;

I. "Shareholder derivative action" means a civil proceeding in a court of law brought by one or more of the "company's" shareholder(s) against any "insured person" for a "wrong act".

J. "Wrongful act" means:
1. any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the "insured entity"

4

SECTION III — EXCLUSIONS
A. Exclusions applicable to all Insuring Agreements
   3. ("Insured v. Insured Exclusion") made by or made
     on behalf of the "company", or any security
     holder of the "company", or any "insured person".

This exclusion does not apply to:
   b. a "shareholder derivative action", but only if
     brought and maintained without the
     solicitation, approval, assistance, active
     participation or intervention of any "insured"
     and only if independent of the actions of any
     "insured" or party affiliated with that
     "insured".
   e. any "claim" brought by any former director or
     officer who has not served as director,
     officer, trustee, governor, management
     committee member, member of the management
     board, general counsel or risk manager (or
     equivalent position) or consultant for the
     "company" for at least three (3) years prior to
     the commencement of such "claim", if the former
     directors or officer bringing such "claim" is
     acting totally independent of, and without the
     solicitation, assistance, active participation
     or intervention of any Directors or Officers or
     the "company".

Am. Compl., Ex. A, Selective Insurance Policy ("Policy"),

ECF No. 19.

    In 2019, Bay Club proposed a financial transaction to

address Bay Club's financial obligations called "The Way

Forward." Selective's Resp. Bay Club's S.O.F. 8, ECF No.

84. "The Way Forward" would change how property was

transferred to club members. Id. On October 31, 2019,

Uihlein served Bay Club with a dispute notice (the "Uihlein

Claims") regarding "The Way Forward." Selective's Resp.

Bay Club's S.O.F. 9, ECF No. 84. On November 5, 2019,

trustees of the Shemamedoit Trust III ("Trust III"), a unitholder of Bay Club, also served Bay Club with a dispute notice (the "Trust III Claims") concerning "The Way Forward." Selective's Resp. Bay Club's S.O.F. 9, ECF No. 84; Bay Club's Resp. S.O.F. 7, ECF. No. 82. Bay Club notified Selective of these dispute notices on November 13, 2019. Id.

On May 6, 2020, Trust III commenced an arbitration proceeding against Bay Club in Massachusetts. Id. The Trust III Claims were brought on behalf of "all other similarly situated members of the Company in both a direct and derivative basis." Id. The Trust III Claims were brought for alleged violations of fiduciary duty and breach of the operating agreement. Selective's Resp. Bay Club's S.O.F. 10, ECF No. 84; Selective's S.O.F. Supp. Mot. Summ. J. ("Selective's S.O.F.") 7, ECF No. 72. Bay Club notified Selective the very next day, May 7, 2020. Id. Selective responded with a letter denying coverage to Bay Club on June 2, 2020. Id. On September 14, 2020, Uihlein joined the arbitration by filing an additional demand for arbitration that incorporated the Trust III Claims and added an additional count. Id. at 10-11. Uihlein's intervention was brought both to pursue his own claims against Bay Club and on behalf of "all other similarly

6

situated members of the Company in both a direct and derivative basis." Id.; Bay Club's Resp. S.O.F. 8-9, ECF. No. 82. On June 28, 2021, Bay Club notified Selective of the Uihlein demand for arbitration. Id. at 12. Selective concedes that Uihlein brought his claims independent of current directors and officers and of Bay Club. Id. at 11. After being informed that Uihlein was a former director, Selective denied coverage in a letter dated August 5, 2021. Id. at 10. Selective concedes the underlying arbitration is a "claim" under the Policy. Id.

On January 5, 2022, a final order and award issued against Bay Club. Id.; Bay Club's Resp. S.O.F. 12-13, ECF. No. 82. The final award granted $750,000 to Trust III and $750,000 to Uihlein. Selective's Resp. Bay Club's S.O.F. 12, ECF No. 84; Bay Club's Resp. S.O.F. 12-13, ECF. No. 82. Further, if Bay Club succeeds in its action against Selective, the award also entitles Uihlein to a portion of Bay Club's award, up to, but not beyond, another $750,000. Bay Club's Resp. S.O.F. 12-13, ECF. No. 82. On January 21, 2022, Trust III brought suit in Delaware, the "Delaware Action," partially to vacate the final order. Id. at 13. Selective was notified on January 25, 2022, of the Delaware Action. Id. at 14. The Delaware Action in no way concerns the Uihlein Claims. Bay Club's Resp. S.O.F. 14, ECF. No.

82. Selective sent a letter on March 4, 2022 denying any obligation to defend or indemnify Bay Club with regard to the Delaware Action. Id. at 15.

**B. Procedural History**

On November 4, 2021, Bay Club commenced this suit against Selective seeking relief for breach of contract, alleged violations of Massachusetts General Laws chapters 93A and 176D, and declaratory relief. Compl., ECF No. 1. Bay Club then filed an amended complaint on March 9, 2022, putting forth three causes of action: breach of contract (count I), declaratory judgment (count II), and violation of Massachusett's General Laws chapters 93A and 176D (count III). Am. Compl., ECF No. 19. Bay Club then filed a motion for partial summary judgment on its first two counts to determine the extent Selective has a duty to defend and indemnify. Bay Club Mot., ECF No. 67. In Bay Club's motion for partial summary judgment, it contends that Selective owes it a duty to defend or, if there was no duty to defend, that the Policy provides illusory coverage. See Bay Club's Mem. Supp. Mot. Summ. J. ("Bay Club's Mem. in Supp.") 17, ECF No. 68.

Selective responded with a motion for summary judgment as to all counts. Selective Mot., ECF No. 70. Selective argues that neither the Uihlein Claims nor the Trust III

8

Claims fall into any exceptions to the Insured v. Insured
Exclusion within the Policy and that Bay Club's contractual
claims are barred by the Contractual Liability Exclusion.
Selective's Mem. Supp. Mot. Summ. J. ("Selective's Mem. in
Supp.") 2, ECF No. 71; Policy § XI(J)(1), (2), ECF No. 19.
Both parties have fully briefed the issues and have filed
multiple statements and responses to statements of
undisputed facts.  Bay Club's Mem. Supp., ECF No. 68; Bay
Club's S.O.F. Supp. Mot. Summ. J., ECF No. 69; Selective's
Mem. Supp., ECF No. 71; Selective's S.O.F., ECF No. 72; Bay
Club's Mem. Opp'n Selective's Mot. Summ. J., ECF No. 81;
Bay Club's Resp. S.O.F., ECF No. 82; Selective's Mem.
Further Supp. Summ. J. and Opp'n Bay Club's Mot. Summ. J.,
ECF No. 83; Selective's Resp. Bay Club's S.O.F., ECF No.
84; Selective's Resp. Bay Club's Resp. (ECF No. 82), ECF
No. 87.

## II.  ANALYSIS

The question of law is whether Selective, per its Policy
with Bay Club, is required to defend against and indemnify Bay
Club in the actions concerning the Trust III and Uihlein claims.

### A. Choice of Law

The Court determines that Massachusetts law governs.
Massachusetts applies a functional test to its choice of law and
determines the governing state law by deciding which state "has

‘          ’

the most significant relationship to the transaction and the

parties." Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622,

632 (1985); Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d

1, 5 (1st Cir. 2004).  In so doing, Massachusetts courts

consider:

> (a) the needs of the interstate and international
> systems, (b) the relevant policies of the forum, (c)
> the relevant policies of other interested states and
> the relative interests of those states in the
> determination of the particular issue, (d) the
> protection of justified expectations, (e) the basic
> policies underlying the particular field of law, (f)
> certainty, predictability, and uniformity of result,
> and (g) ease in the determination and application of
> the law to be applied.

Bushkin, 393 Mass. at 632 (quoting Restatement (Second) Conflict

of Laws § 6 (1971)).  Finally, courts may also consider "(A)

Predictability of results; (B) Maintenance of interstate and

international order; (C) Simplification of the judicial task;

(D) Advancement of the forum's governmental interests; [and] (E)

Application of the better rule of law." Reicher, 360 F.3d at 5.

    In this case, these factors point towards the application

of Massachusetts law.  Bay Club and its members reside in

Massachusetts and Bay Club's primary place of business is in

Massachusetts.  Am. Compl. 1-2, ECF No. 19; Bay Club's Resp.

S.O.F. 2, ECF. No. 82.  Further, in insuring Bay Club, Selective

would reasonably know it was most likely that a claim against

Bay Club would be brought, litigated, or resolved in

Massachusetts, even though there was a possibility litigation could be brought elsewhere, perhaps in Delaware. Finally, Bay Club brings claims under Massachusetts General Laws 93A and 176D, related to unfair practices of insurance companies, implicating the forum's "governmental interest." Am. Compl., ECF No. 19; Reicher, 360 F.3d at 5. Weighing the factors listed above heavily indicates that Massachusetts law is the appropriate law to be applied here. Massachusetts law, therefore, shall govern in this case.

**B. Pleading Standard**

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Materiality depends on the substantive law, and only factual disputes that might affect the outcome of the suit can preclude summary judgment. Id. In reviewing the evidence, this Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150. This Court must also "disregard all evidence favorable to the moving party that the jury is not required to

believe." Id. at 151.  The moving party bears the initial burden of demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant does so, then the nonmovant must set forth specific facts sufficient to establish a genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"The [summary judgment pleading standard is] the same where, as here, both parties have moved for summary judgment." Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).  The fact that both parties have moved for summary judgment on the same issues, "neither dilutes nor distorts" the summary judgment standard of review. See Hartford Fire Ins. Co. v. CNA Ins. Co., 633 F.3d 50, 53 (1st Cir. 2011).  When courts are considering cross-motions for summary judgment, they must "consider each motion separately, drawing all inferences in favor of each non-moving party in turn." AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (quoting D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011)).  "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not

disputed.'" Wells Real Estate Inv. Tr. II, Inc. v. Chardón/Hato Rey P'ship, 615 F.3d 45, 51 (1st Cir. 2010) (quoting Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)).  The Court must "in each instance [determine] whether the moving party has met its burden under Rule 56." Dan Barclay, Inc. v. Stewart & Stevenson Servs., Inc., 761 F. Supp. 194, 197-98 (D. Mass. 1991) (Caffrey, J.).

The interpretation of an insurance policy is matter of law properly fitted to summary judgment.  U.S. Liab. Ins. Co. v. Benchmark Const. Serv., Inc., 797 F.3d 116, 119 (1st Cir. 2015); Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009); Home Ins. Co. v. Liberty Mut. Fire Ins. Co., 444 Mass. 599, 601 (2005); Dorchester Mut. Ins. Co. v. Krusell, 485 Mass. 431, 436-37 (2020).  The Court enforces the plain, ordinary, and definite meaning of the provisions of insurance policies.  Clark Sch. for Creative Learning, Inc. v. Philadelphia Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013); Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000); McGilloway v. Safety Ins. Co., 488 Mass. 610, 613-14 (2021).  A provision is considered ambiguous where the "policy language is susceptible to more than one rational interpretation." Clark Sch., 734 F.3d at 55 (quoting Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012)); Brazas Sporting Arms, 220 F.3d at 4-5.  Under such circumstances, ambiguities are to be

13

"construed in favor of the insured." Clark Sch., 734 F.3d at 55. Here there are no issues of material fact that affect the Court's decision on this issue, and therefore the question of law before it can be decided now.

This dispute primarily arises out of the Policy's Insured v. Insured Exclusion. Policy I. A. §§ III(A)(3), III(A)(3)(b), III(A)(3)(e). That exclusion is standard, and its purpose is to prevent insured parties from suing one another to reap financial reward from insurance companies. See In re Molten Metal Tech., Inc., 271 B.R. 711, 728 (Bankr. D. Mass. 2002). In other words, these exclusions are placed into contracts out of fear of possible collusion. Id. Here, the exclusion comes with two important exceptions: in Coverage Part A Section III(A)(3)(b), the "Shareholder Derivative Exception," and in Coverage Part A Section III(A)(3)(e), the "Former Director and Officer Exception." Policy I. A. §§ III(A)(3), III(A)(3)(b), III(A)(3)(e). These exceptions restore coverage for actions otherwise excluded, such as those brought by insureds. Id. The Insured v. Insured Exclusion excludes shareholder derivative suits except those "brought and maintained" without any activity or coordination with an "insured." See id. I. A. § III(A)(3), III(A)(3)(b). Finally, the Former Director and Officer exception restores coverage to "any 'claim' brought by any former director or officer" that would "roughly [sketch] a claim

covered by the Policy terms" if brought three years after their service as a director or officer and brought completely independent of current directors and officers or Bay Club.  <u>Id.</u> I. A. §§ III(A)(3), III(A)(3)(e).

### C. Counts I and II: Breach of Contract and Declaratory Relief

#### 1. Duty to Defend

Selective had a duty to defend once the Uihlein Claims were filed.  Selective's Resp. Bay Club's S.O.F. 9, ECF No. 84.  A duty to defend is "triggered where the allegations in [a] complaint 'are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms,'" regardless of whether the claim might fail.  <u>Holyoke Mut. Ins. Co. in Salem</u> v. <u>Vibram USA, Inc.</u>, 480 Mass. 480, 483-84 (2018) (quoting <u>Billings</u> v. <u>Commerce Ins. Co.</u>, 458 Mass. 194, 200 (2010)).  The duty to defend and the duty to pay defense costs are identical in Massachusetts.  <u>Mount Vernon Fire Ins. Co.</u> v. <u>Visionaid, Inc.</u>, 477 Mass. 343, 353 (2017).  The duty to defend is determined by comparing the allegations in the complaint with the language of the insurance policy.  <u>Id.</u> at 577 (quoting <u>Deutsche Bank Nat'l Ass'n</u> v. <u>First Am. Title Ins. Co.</u>, 465 Mass. 741, 744-45 (2013)).  Further, any uncertainty as to whether claims are reasonably covered is "resolved in favor of the insured."  <u>Id.</u>  Where an insurer has a duty to defend one

count of a complaint, it "must defend them all." Mt. Airy Ins.
Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997).  Finally,
there is no duty to defend claims that are "specifically
excluded from coverage."  Id.; see also Clarendon Nat'l Ins. Co.
v. Philadelphia Indem. Ins. Co., 954 F.3d 397, 405 (1st Cir.
2020).

### a.   Uihlein Claims

Selective had a duty to defend against the Uihlein Claims.
The claims brought by Uihlein are "reasonably susceptible of an
interpretation that states or roughly sketches a claim covered
by the policy terms." Holyoke, 480 Mass. at 483-84; Policy §§
XI(J)(1), XI (J)(2), I. A. II(A)(3), I. A. III(A)(3)(e), ECF No.
19.  The Policy includes a Former Directors and Officers
exception to the Insured v. Insured Exclusion.  Id. I. A. §§
III(A)(3), III(A)(3)(e).  Under this exception, "any 'claim'
brought by any former director or officer" would "roughly
[sketch] a claim covered by the Policy terms" if brought three
years after their service as a director or officer and brought
completely independently of current directors and officers or
Bay Club.  Id. I. A. §§ III(A)(3), III(A)(3)(e); Holyoke, 480
Mass. at 483-84.  The Uihlein Claim clears these hurdles.
Uihlein has not been a director or officer for well over a
decade and his claims, as stated by Selective, were brought
independently of any current directors, officers, or Bay Club

16

itself.  Selective's Resp. Bay Club's S.O.F. 11, ECF No. 84.  In other words, this Court determines that Selective had a duty to defend Bay Club against the Uihlein Claims due to the coverage provided by the Former Directors and Officers exception to the Insured v. Insured Exclusion.  As the Policy provides, Selective is obligated to provide for a defense to "any 'claim'" brought by a former director or officer of Bay Club.  Further, Selective is required to indemnify Bay Club for any "loss" originating out of any covered "claim" the "insured persons" or company are legally obligated to pay.  Policy I. A. §§ I(A), I(C), II(A), II(C), II(E), II(F).  Thus, this Court determines that Selective breached the contract by not defending or indemnifying Bay Club concerning these claims.

### b.    Trust III Claims

Selective did not have a duty to defend against the Trust III Claims.  Although Trust III's Claims constitute claims under the Policy, they are "specifically excluded from coverage." Policy I. A. §§ II(A)(3), III(A)(3)(b), ECF No. 19; Mt. Airy, 127 F.3d at 15.  Under the Policy, shareholder derivative suits are defined as civil proceedings brought "in a court of law." Policy § II(I), ECF No. 19.  Further, there exists the Insured v. Insured Exclusion.  Id. § III(A)(3).  That provision excludes shareholder derivative suits except those "brought and maintained" without any activity or coordination with an

"insured."   See id. § III(A)(3)(b).   Here, Trust III brought its claims in arbitration, not "in a court of law."   Policy I. A. §§ II(I); Bay Club's Resp. S.O.F. 7, ECF. No. 82; Selective's Resp. Bay Club's S.O.F. 9, ECF No. 84.   That fact alone disqualifies this action from coverage for Bay Club under Coverage Part A Section II(I), since the Shareholder Derivative Exception to the Insured v. Insured Exclusion would not be viable by definition without an actual shareholder derivative suit.   Policy I. A. § II(A)(I), ECF No. 19.   Beyond that disqualification, the further addition of Uihlein to the arbitration in September of 2020 also violates the shareholder exception to the Insured v. Insured Exclusion because Trust III's action would no longer be "brought and maintained" without the "participation" of an "insured," as Uihlein is a former director.   Id. § III(A)(3)(b).   In either case, the Trust III Claims were "specifically excluded from coverage" and therefore Selective did not have a duty to defend. Mt. Airy, 127 F.3d at 15.   Since Selective did not owe a duty to defend Bay Club over the Trust III Claims, Selective does not owe coverage to Bay Club over the Delaware Action -- an action brought only by Trust III.   Bay Club's Resp. S.O.F. 14, ECF. No. 82.   This Court determines Selective did not have a duty to defend against the Trust III Claims and therefore did not breach the contract with Bay Club regarding these claims.

## 2. Illusory Coverage

The Insured v. Insured Exclusion does not constitute illusory coverage. Illusory coverage occurs when a provision in an insurance policy "negates the very coverage that the policy purports to provide," and in so doing frustrates the insured's reasonable expectations. Liberty Mut. Ins. Co. v. Tabor, 407 Mass. 354, 358 (1990); Leinas v. Liberty Mut. Ins. Co., 37 Mass. Apt. Ct. 952, 953 (1994). Illusory coverage may occur from a far-reaching exclusion. Illusory coverage does not exist, however, if the Policy "still provides coverage for some acts." Bagley v. Monticello Ins. Co., 430 Mass. 454, 459 (1999).

The coverage Selective provided in its policy was not illusory. Bay Club contends that if Selective's policy did not create a duty to defend that it has provided illusory coverage. See Bay Club's Mem. Supp. 17, ECF No. 68. Since Selective did have a duty to defend against the Uihlein Claims, Bay Club's only assertion of illusory coverage concerns the Trust III Claims and the Shareholder Derivative Exception. See id.; Policy §§ II(A)(3), III(A)(3)(b), ECF No. 19. Bay Club's primary assertion of illusory coverage concerns the restriction of shareholder derivative suits to actions "in a court of law." Bay Club's Mem. Supp. 17, ECF No. 68. Bay Club goes on to suggest that the Policy's definition of shareholder derivative suits as being brought "in a court of law" makes it illusory

because of the Operating Agreement's compelled arbitration for such suits.  See Bay Club's Mem. Supp. 18, ECF No. 68; Policy §§ II(I), III(A)(3)(b), ECF No. 19; Bay Club's Resp. S.O.F. 2, ECF. No. 82; Selective's Resp. Bay Club's S.O.F. 1, ECF No. 84. This, however, is not illusory coverage.

Illusory coverage requires a provision of the Policy to negate the coverage provided elsewhere in the same policy. Tabor, 407 Mass. at 358; Leinas, 37 Mass. Apt. Ct. at 953. Here, a secondary contract, the Operating Agreement, not the Selective policy, limited shareholder derivative suits to arbitration.  Bay Club's Resp. S.O.F. 2, ECF. No. 82; Selective's Resp. Bay Club's S.O.F. 1, ECF No. 84.  The Policy also "still [provides] coverage for some acts." Bagley, 430 Mass. at 459.  Trust III could have brought its claims as a violation of fiduciary duty statutorily established under Delaware law.  Finally, in this case, Bay Club would still not have access to the Shareholder Derivative Exception due to Uihlein, an insured, joining the arbitration.  Selective's Resp. Bay Club's S.O.F. 10-11, ECF No. 84; Policy § III(A)(3)(b), ECF No. 19.  Due to the Operating Agreement, this Court determines that Selective did not provide illusory coverage to Bay Club and therefore did not breach the contract with Bay Club regarding these claims.

### 3. Contractual Liability Exclusion

No claims are barred by the Contractual Liability Exclusion.  Policy §§ XI(J)(1), XI (J)(2), ECF No. 19. According to that section, exemptions to this exclusion include liability that would otherwise exist absent a contract or agreement and "'insureds'" under Sections I. A. and I. B. under Coverage Part A."  Id.  The fiduciary claims of Trust III and Uihlein are encompassed by the former exemption and Uihlein's contractual claims are preserved by the latter exemption.  Thus, Trust III's Claims although not barred by the Contractual Liability Exclusion are barred for failing to meet an exception to the Insured v. Insured Exclusion. The Uihlein Claims, both contractual and fiduciary, survive the Contractual Liability Exclusion and are covered due to the Former Directors and Officers Exception to the Insured v. Insured Exclusion.

### D. Count III: Massachusetts General Laws Chapters 93A and 176D

The violation of Massachusetts General Laws chapters 93A and 176D is matter of fact to be determined by a fact finder. See Clarendon Nat'l Ins., 954 F.3d at 409; Rawan v. Cont'l Cas. Co., 483 Mass. 654, 663 (2019); Mass. Gen. Laws Ann. ch. 93A, ch. 176D.  Unfair claim settlement practices under Massachusetts General Law chapter 176D include "the failure to 'effectuate prompt, fair and equitable settlements of claims in which

21

liability has become reasonably clear.'" Rawan, 483 Mass. at
663.   Further, an insurer's "refusal to pay claims 'without
conducting a reasonable investigation based on all available
information,'" would also violate chapter 176D.  Id.  For
consumers, like Bay Club, "a violation of chapter 176D, section
3(9) constitutes a violation of chapter 93A." Clarendon Nat'l
Ins., 954 F.3d at 409; Rawan, 483 Mass. at 663.  These statutes
hold insurers to a standard of good faith and fair dealing.
Clarendon Nat'l Ins., 954 F.3d at 409.  Bad faith claims require
plaintiffs "produce factual evidence of the defendant's
knowledge and intent."  Id.  Finally, although the denial of
coverage "based on an unreasonable interpretation of policy
terms may constitute bad faith, 'plausible, although ultimately
incorrect' interpretations of an insured's policy coverage do
not."  Id.

    Only Selective has moved for summary judgment on Count III.
Bay Club Mot., ECF No. 67; Selective Mot., ECF No. 70.  The crux
of this dispute concerns a complex contract, and there is
currently insufficient evidence to suggest Selective denied
coverage in bad faith.  Violations of these chapters turn on
reasonableness, knowledge, and intent - - matters of fact. See
Clarendon Nat'l Ins., 954 F.3d at 409; Rawan, 483 Mass. at 663;
Fed. R. Civ. P. 56(a). Only this Court's duty to draw all
reasonable inferences in favor of Bay Club saves this count for

trial. Therefore, Selective's motion for summary judgment on this count is denied.

## III. CONCLUSION

Bay Club and Selective have each, independently, moved for summary judgment as matter of law.  See Bay Club Mot., ECF No. 67; Selective Mot., ECF. No. 70.  Selective owed a duty to defend and indemnify Bay Club as to claims brought by Uihlein. Holyoke, 480 Mass. at 483-84; Policy §§ XI(J)(1), XI (J)(2), I. A. § I(A), I. A. § I(C), I. A. § II(A)(3), I. A. § II(C), I. A. § II(E), I. A. § II(F), I. A. § III(A)(3)(e), ECF No. 19; Selective's Resp. Bay Club's S.O.F. 11, ECF No. 84.  No claims, either Uihlein's or Trust III's, are barred by the Contractual Liability Exclusion.  Policy §§ XI(J)(1), XI (J)(2), ECF No. 19. Further, Uihlein Claims fall within the Former Directors and Officers exception to the Insured v. Insured Exclusion of the Policy.  Policy I. A. §§ III(A)(3), III(A)(3)(e), ECF No. 19. Therefore, summary judgment was GRANTED to Bay Club and DENIED to Selective concerning counts I and II in so far as they cover Uihlein Claims.  ECF No. 67. Trust III Claims, however, are barred by failing to fall within the Shareholder Derivative Exception to the Insured v. Insured Exclusion.  Policy I. A. §§ II(A)(3), II(I), III(A)(3)(b), ECF No. 19.  Selective did not owe a duty to defend to claims brought by Trust III and therefore to any coverage of the Delaware Action.  Policy I. A.

§§ II(A)(3), II(I), III(A)(3)(b), ECF No. 19; <u>Mt. Airy</u>, 127 F.3d
at 15; Bay Club's Resp. S.O.F. 7, ECF. No. 82; Selective's Resp.
Bay Club's S.O.F. 9, ECF No. 84.  Thus, summary judgment is
GRANTED to Selective and DENIED to Bay Club on counts I and II
in so far as they concern Trust III Claims.  <u>See</u> Bay Club Mot.,
ECF No. 67; Selective Mot., ECF. No. 70.  The Policy provisions
governing shareholder derivative suits -- like Trust III Claims
-- do not constitute illusory coverage.  <u>Tabor</u>, 407 Mass. at
358; <u>Leinas</u>, 37 Mass. Apt. Ct. at 953; <u>Bagley</u>, 430 Mass. at 459;
Bay Club's Resp. S.O.F. 2, ECF. No. 82; Selective's Resp. Bay
Club's S.O.F. 1, ECF No. 84.  Finally, Selective's motion for
summary judgment on count III is DENIED because violations of
Massachusetts General Laws chapters 93A and 176D are matters of
fact not properly decided through summary judgment.  <u>See</u>
Selective Mot., ECF. No. 70.

**SO ORDERED.**

*William G. Young*
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[1]

---

[1] This is how my predecessor, Peleg Sprague (D. Mass. 1841-
1865), would sign official documents.  Now that I'm a Senior
District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 45 years.